IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

SHEDRICK D. HOLLIS,                )
                                   )
          Petitioner,              )
                                   )        CIVIL ACTION NO.
     v.                            )        3:16-CV-351-WKW
                                   )           [WO]
UNITED STATES OF AMERICA,          )
                                   )
          Respondent.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is petitioner Shedrick D. Hollis's ("Hollis") *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Doc. No. 1.[1]

## I.   INTRODUCTION

In March 2013, a jury found Hollis guilty of two counts of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Counts 1 and 2); one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 3); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(e) (Count 4). Doc. No. 15-26. After a sentencing hearing on August 6, 2013, the district court sentenced Hollis to 420 months

---

[1] Unless otherwise indicated, references to "Doc. No(s)." are to the document numbers of the pleadings, motions, and other materials in the court file in this civil action, as compiled and designated on the docket sheet by the Clerk of Court. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

in prison, consisting of concurrent terms of 360 months on Counts 1, 2, and 4 and a consecutive term of 60 months on Count 3.  Doc. No. 15-27; Doc. No. 1-7 at 1–2.

Hollis appealed, arguing that (1) the district court erred in denying his motion to suppress the drug and firearm evidence found in the apartment where he was arrested; and (2) the district court abused its discretion by excluding testimony from the defense's forensic expert regarding the sufficiency of a latent fingerprint for comparison.  *See* Doc. No. 15-29.  On March 12, 2105, the Eleventh Circuit issued an opinion affirming Hollis's convictions and sentence.  *United States v. Hollis*, 780 F.3d 1064 (11th Cir. 2015); Doc. No. 15-30.  Hollis filed a petition for writ of certiorari in the United States Supreme Court, which that court denied on October 5, 2015.  Doc. No. 15-31.

On May 5, 2016, Hollis filed this § 2255 motion asserting the following claims:

1.   His counsel rendered ineffective assistance by failing to (a) investigate the defense's forensic expert to determine if he was qualified as an expert in latent fingerprint analysis; (b) object on Confrontation Clause grounds to testimony by the Government's expert in latent fingerprint analysis; (c) cross-examine the Government's fingerprint expert about deficiencies in the FBI system of fingerprint analysis; and (d) call as a witness a second examiner who analyzed fingerprint evidence in the case.

2.   His counsel rendered ineffective assistance by failing to (a) object to the § 924(c) count in the indictment on grounds that (i) it was duplicitous, and (ii) it did not include as an element that the firearm possession had to be in furtherance of, or in aid of, the drug trafficking crime; and (b) object to the district court's jury instruction on the § 924(c) count on grounds that (i) it criminalized two separate offenses, and (ii) it did not inform the jury that the firearm possession had to be in aid of the drug trafficking crime.

3.   His counsel rendered ineffective assistance by failing to (a) move to suppress the seized evidence on grounds that law enforcement conducted an unlawful search incident to arrest under the standard of

2

*Chimel v. California*, 395 U.S. 752 (1999), and for failing to request a suppression hearing on this same theory; (b) move to suppress on grounds that the evidence was fruit of the poisonous tree obtained through police misconduct; and (c) file a motion in limine or to suppress the drug evidence on grounds it was mishandled by law enforcement.

4.   His counsel rendered ineffective assistance by failing to impeach various witnesses regarding inaccuracies, conflicts, and inconsistencies in their testimony.

5.   His counsel rendered ineffective assistance by failing to have the drug evidence reweighed and reanalyzed.

6.   His counsel rendered ineffective assistance by failing to request a jury instruction on possession of small amounts of a controlled substance under 21 U.S.C. § 844(a) and allowing the court to instruct the jury on a § 841(a)(1) offense.

7.   His counsel at his first trial was ineffective for requesting a mistrial.

8.   His counsel rendered ineffective assistance by failing to request a reduction in his offense level based on acceptance of responsibility under U.S.S.G. § 3E1.1.

9.   His counsel rendered ineffective assistance by failing to argue he was actually innocent of all criminal conduct except for possession of marijuana.

10.   His counsel rendered ineffective assistance by failing to argue that his prior drug convictions could not be used to enhance his sentence under the career offender guideline and under the Armed Career Criminal Act.

11.   His counsel rendered ineffective assistance by failing to request a two-level reduction to his offense level based on Amendment 782 to the Sentencing Guidelines.

12.   His appellate counsel rendered ineffective assistance by failing to (a) raise various claims of ineffective assistance of trial counsel; (b) pursue the issue that the district court abused its discretion by excluding testimony from the defense's forensic expert regarding the sufficiency of a latent fingerprint for comparison; and (c) argue that the evidence was insufficient to sustain his convictions.

Doc. No. 1 at 4–10; Doc. No. 1-1 through 1-3; Doc. No. 2 at 2–20.[2]

For the reasons that follow, the court concludes that Hollis's § 2255 motion should be denied without an evidentiary hearing and this action be dismissed with prejudice.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.[3]

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete

---

[2] Hollis sets forth his claim in a discursive fashion.  His claims also overlap and are repetitive in places. For organizational and analytical purposes, the court has recast some of his claims in a more appropriate presentation.

[3] The arguments underlying several of Hollis's ineffective-assistance claims are also presented by Hollis as separate freestanding claims. The Government argues that these freestanding claims are procedurally defaulted (Doc. No. 15 at 62–65), but Hollis asserts the ineffective assistance of counsel as "cause" excusing his default (Doc. No. 23 at 17–18).  Under these circumstances, this court's consideration of the merits of Hollis's ineffective-assistance claims will necessarily address the merits of any related freestanding claims.

miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id*.  (internal quotation marks and brackets omitted).   "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one."  *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the

petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish . . . that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### 1. *Ineffective-Assistance Claims Related to Fingerprint Analysis*

**a. <u>Failure to investigate defense's own expert</u>**. Hollis claims his trial counsel was ineffective for failing to investigate the defense's forensic expert to determine if he was qualified as an expert in latent fingerprint analysis. Doc. No. 1 at 4; Doc. No. 2 at 2–5.

In a search of the apartment where Hollis was arrested, officers discovered about a pound of cocaine, large amounts of marijuana, crack cocaine, ecstasy, scales, and about $5,000 in cash. One scale had a latent fingerprint on it attributed to Hollis by the Government's expert in latent fingerprint analysis. Hollis's counsel hired a forensic expert, Lawden Yates, Jr., with the purpose of presenting testimony from Yates that the latent fingerprint found on the scale was not sufficiently clear for examination and comparison. As summarized by the Eleventh Circuit in its opinion in Hollis's direct appeal:

> Before trial, the government moved to exclude the testimony of Hollis's fingerprint expert, Lawden Yates, Jr. The government requested a hearing to confirm Yates's qualifications under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The district court held a hearing and ruled that Yates could not testify "as to fingerprint comparison." But the district court reserved judgment on whether Yates could testify about whether the latent fingerprint was of sufficient quality to make a comparison. Yates later testified that there "shouldn't be any" difference between the expertise required to compare fingerprints and the expertise used to judge the sufficiency of a latent fingerprint for comparison. He also testified that when in doubt, a technician should send a print to the laboratory to see if an identification can be made. Because the district court had already ruled that Yates was not qualified to testify about fingerprint comparisons and the same expertise was required to judge the sufficiency of a latent print for comparison, the district court ruled that Yates could not testify about the sufficiency of the print taken from the scale.

*United States v. Hollis*, 780 F.3d 1064, 1067 (11th Cir. 2015).

In an affidavit addressing Hollis's present claim of ineffective assistance, Hollis's trial counsel Richard M. Kemmer, Jr. avers:

> I employed Lawden Yates as an expert to assist me in the trial of the Hollis case. Mr. Yates is the former lab director for the Alabama Department of Forensic Sciences and was familiar with the general science of fingerprint analysis. I did not have the funds to employ fingerprint analysts to assist me in this trial. Mr. Yates was primarily an expert regarding firearms, and the

fact that no prints were found on the firearms seized from the residence was a main point in our defense.  I fully investigated Yates and he came highly recommended from other criminal defense lawyers within the state.  He has since assisted me in two major felony trials, one of which resulted in an acquittal based primarily upon Mr. Yates' testimony.

The issue regarding the court disallowing Yates' testimony was appealed to the Eleventh Circuit Court of Appeals and the Appeals Court affirmed the ruling of [District Court] Judge Watkins.

I was not aware as trial counsel, nor was Mr. Shelnutt,[4] of any additional fingerprint experts who were willing to assist Mr. Hollis.

It should be noted that Mr. Yates provided valuable insight and support which allowed me to cross-examine the government expert with regard to fingerprint analysis.

Doc. No. 4 at 1–2 (numbering of paragraphs omitted; footnote added).

Hollis does nothing to substantiate his cursory allegation that his counsel failed to investigate Yates to determine if he was qualified as an expert in latent fingerprint analysis. That the district court ultimately ruled that Yates was not qualified to testify about the sufficiency of the latent fingerprint for comparison does not establish that Hollis's counsel performed unreasonably in attempting to use Yates—a forensic scientist familiar with the general science of fingerprint analysis—as an expert in the field, particularly when there appeared to be no other experts willing to testify that the latent print was insufficient to be used for comparison.  Moreover, Hollis identifies no other expert who would have testified that the fingerprint found on the scale was insufficiently clear for purposes of comparison,

---

[4] Mr. Kemmer was lead counsel at Hollis's trial and at his prior mistrial.  Attorneys J. Mark Shelnutt and Stephanie W. Kemmer assisted Mr. Kemmer as cocounsel at Hollis's first trial.  Ms. Kemmer assisted Mr. Kemmer at Hollis's retrial; Shelnutt did not participate in the retrial.  Mr. Kemmer and Ms. Kemmer represented Hollis in his appeal.

or who would have testified that the fingerprint on the scale attributed to Hollis by the Government's expert was not actually Hollis's.

Hollis has not shown that his counsel's representation "fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 689, or that there is a reasonable probability that "but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different," *id*. at 694. Consequently, he is entitled to no relief on this claim of ineffective assistance of counsel.

**b.   Failure to object to Government's fingerprint expert on Confrontation Clause grounds**.  Hollis contends that his trial counsel was ineffective for failing to object on Confrontation Clause grounds to testimony by Joe Maberry, the Government's expert in latent fingerprint analysis.  Doc. No. 1 at 5; Doc. 1-1; Doc. No. 2 at 5–6.  He also argues that his appellate counsel was ineffective for failing to raise this issue on appeal.  *Id*.

Maberry, a senior fingerprint specialist with DEA South Central Laboratory in Dallas, Texas, testified at trial that he found Hollis's right thumbprint on one scale seized during a search of the residence where Hollis was arrested.  According to Hollis, Maberry's testimony should have been challenged on Confrontation Clause grounds because, he says, Maberry did not actually conduct the comparison analysis that determined that Hollis's print was found on the scale.  Hollis maintains that another fingerprint analyst, who was not called to testify, conducted the comparison.

Hollis's claim notwithstanding, testimony at trial established that Maberry—and not another fingerprint analyst—conducted the comparison analysis that determined it was Hollis's print on the scale.  *See* Doc. No. 16-4 at 107–18.  Thus, there is no merit to Hollis's

9

claim that his trial counsel was ineffective for failing to challenge Maberry's testimony on Confrontation Clause grounds.  For the same reasons, Hollis cannot show that his counsel was ineffective for failing to raise this issue on appeal.

c. **Inadequate cross-examination of Government's fingerprint expert**.  Hollis argues that his trial counsel was ineffective for failing to cross-examine Maberry about deficiencies in the FBI's ACE-V system of fingerprint analysis.  Doc. No. 2 at 4 & 6.  The record, however, reflects that Hollis's counsel thoroughly questioned Maberry about flaws in the FBI system of print analysis, pointing out specific mistakes made in other cases.  *See* Doc. No. 15-23 at 35–43.  Hollis presents nothing to suggest what additional cross-examination of Maberry about these matters would have yielded beneficial to his defense.

Where a court can only speculate on whether the outcome of a proceeding would have been different had defense counsel conducted further cross-examination of a witness, there is an insufficient showing of prejudice under *Strickland*.  *See Poindexter v. Mitchell*, 454 F.3d 564, 572–73 (6th Cir. 2006).  Hollis proves neither deficient performance nor prejudice.  He is entitled to no relief on this claim.

d. **Failure to call second analyst as witness**.  Hollis contends that his trial counsel was ineffective for failing to call as a witness a second forensic examiner who analyzed fingerprint evidence.  Doc. No. 1-1; Doc. No. 2 at 5–7.

The Government's expert, Maberry, testified that a second analyst with the DEA tested other scales seized after Hollis's arrest, which were not tested by Maberry, and found no latent fingerprints on those scales.  Doc. No. 15-23 at 27.  This testimony indicated that Hollis's fingerprint was found only on the scale tested by Maberry.  Hollis suggests nothing

about which the uncalled second analyst might have testified that was not made known to the jury through Maberry's testimony.  Hollis proves neither deficient performance by counsel in failing to call the second analyst to testify nor prejudice resulting from counsel's actions.  Therefore, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 2.   *Ineffective-Assistance Claims Related to § 924(c) Count*

**a.   <u>Section 924(c) count (Count 3) in indictment</u>.**  Hollis claims his trial and appellate counsel were ineffective for failing to object to the § 924(c) count (Count 3 in the indictment) on grounds that (i) it was duplicitous (Doc. No. 2 at 19–20; Doc. 23 at 5–8); and (ii) it did not include as an element that the firearm possession had to be in furtherance of, or in aid of, the drug trafficking crime (Doc. No. 2 at 15).

Count 3 of the indictment alleged:

> That on or about March 1, 2011, in Russell County, within the Middle District of Alabama, the defendant,
>
> SHEDRICK D. HOLLIS,
>
> did knowingly use and carry a firearm, during and in relation to, and possessed a firearm in furtherance of, a drug trafficking crime for which he may be prosecuted in a court of the United States, to-wit: possession with intent to distribute a mixture and substance containing a detectable amount of 1-Benzylpiperazine, a mixture and substance containing a detectable amount of marijuana, both Schedule I Controlled Substances, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, and 28 grams or more of a mixture and substance containing cocaine base, both Schedule II Controlled Substances, in violation of Title 21, United States Code, Section 841(a)(1), as set out and incorporated herein by reference from Count 1 and Count 2 of this indictment, in violation of Title 18 United States Code, Section 924(c)(1)(A).

Doc. No. 15-1 at 2.

In alleging that Count 3 was duplicitous, Hollis appears to argue that the § 924(c) count charged multiple offenses rather than one. *See* Doc. 23 at 5–8. "A count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." *United States v. Schlei,* 122 F.3d 944, 977 (11th Cir. 1997) (citing *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989)). Duplicitous counts pose three dangers: (1) a jury may convict a defendant without unanimous agreement on the same offense; (2) a defendant may suffer prejudice in a subsequent double jeopardy defense; and (3) a court may find it difficult to rule on the admissibility of evidence. *Schlei,* 122 F.3d at 977 (citation omitted).

Where the language of a statute proscribes several means by which the defendant might have committed a violation, the government may charge the offense conjunctively and satisfy its burden of proof by any one of the means, i.e., disjunctively. *See United States v. Cornillie*, 92 F.3d 1108, 1110 (11th Cir. 1996); *United States v. Griffin*, 705 F.2d 434, 436 (11th Cir. 1983). Section 924(c)(1) is an example of such a statute. *See, e.g., United States v. Lott*, 310 F.3d 1231, 1246–47 (10th Cir. 2002). There are two ways to violate § 924(c): the statute makes it an offense to either (1) use or carry a firearm during and in relation to a crime of violence or drug trafficking crime or (2) possess a firearm in furtherance of such crime. *See United States v. Timmons*, 283 F.3d 1246, 1250–53 (11th Cir. 2002); *United States v. Daniel*, 173 F. App'x 766, 770 (11th Cir. 2006) ("Thus, there are two separate ways to violate the statute: to use or carry a firearm during and in relation to a drug trafficking crime or to possess a firearm in furtherance of a drug trafficking crime."

Count 3 of the indictment charged Hollis with violating § 924(c)(1) in multiple ways.  "An indictment is not duplicitous if, in one count, it charges a defendant with violating [a] statute in [multiple] ways."  *Burton,* 871 F.2d at 1574.  Thus, there was no duplicity problem with Count 3 of the indictment.  (Nor does Hollis demonstrate a duplicity problem with any other count of the indictment.)  Consequently, Hollis's trial and appellate counsel were not ineffective for failing to object to the § 924(c) count on grounds that it was duplicitous.  Counsel is not ineffective for failing to argue a meritless claim. *See Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

As for Hollis's claim that the § 924(c) offense charged in Count 3 was defective because it did not include as an element that the firearm possession had to be in furtherance of, or in aid of, the drug trafficking crime (*see* Doc. No. 2 at 15), the record shows that the §924(c) count properly charged that the firearm possession was in furtherance of the drug trafficking crime.  *See* Doc. No. 15-1 at 2.  The charged count effectively tracked the language of the statute, which does not contain specific language that the firearm possession was "in aid of" the drug trafficking crime.  Hollis's trial and appellate counsel were not ineffective for failing to object to Count 3 on this ground, and this claim entitles Hollis to no relief.

**b. <u>Jury instruction on § 924(c) count</u>.**  Hollis claims his trial and appellate counsel were ineffective for failing to object to the district court's jury instruction on the § 924(c) count on grounds that (i) the instruction criminalized two separate offenses (Doc. No. 1 at

7; Doc. No. 2 at 14–15); and (ii) the instruction did not inform the jury that the firearm possession had to be in aid of the drug trafficking crime (Doc. No. 2 at 15).

The district court's jury instruction on the § 924(c) count, i.e., Count 3, tracked the language of the statute.  *See* Doc. No. 15-25 at 9–11.[5]  Therefore, the instruction was appropriate and correct.  *See United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (an indictment is generally sufficient if it charges in the language of the statute).   Further, the court's instruction did not, as Hollis suggests, inform the jury that it was considering separate offenses in the charge in Count 3, but instead properly informed the jury that there are two ways to violate § 924(c).  *See Daniel*, 173 F. App'x at 770 (there are two separate ways to violate the statute).  Finally, in all important respects, the instruction given by the court followed the Eleventh Circuit Pattern Jury Instructions.  *Eleventh Circuit Pattern Jury Instruction (Criminal)* § 35.2, "Carrying/Possessing a Firearm During or in Furtherance of a Drug Trafficking Crime or Crime of Violence, 18 U.S.C. § 924(c)(1)(A)" (2010).  *See United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007) (pattern jury instructions are a valuable resource in evaluating instructions given by the district court, though they are not binding).  Hollis's trial and appellate counsel were not ineffective for failing to object to the district court's jury instruction on the § 924(c) count on grounds that it criminalized two separate offenses.  Hollis is entitled to no relief on this claim.

Hollis says the district court's instruction on Count 3 was defective because it did not inform the jury that the firearm possession had to be "in aid of" the drug trafficking

---

[5] *See also* Criminal Case No. 3:12cr-17-WKW, Doc. No. 151 at 213–15.

crime.  Doc. No. 2 at 15.  As indicated above, § 924(c) does not contain specific language that the firearm possession was "in aid of" the drug trafficking crime.  The court's instruction properly informed jurors that the firearm possession must be in furtherance of the drug trafficking crime.  Doc. No. 15-25 at 9-10.[6]  Moreover, the court explained that "in furtherance of" means "the firearm helped, promoted, or advanced the crime in some way."  Doc. No. 15-25 at 11.[7]  Hollis's trial and appellate counsel were not ineffective for failing to object object on this ground, and this claim entitles Hollis to no relief.

### 3.   *Ineffective-Assistance Claims Related to Suppression Issues*

**a.   <u>Search-incident-to-arrest argument</u>.**  Hollis claims his trial counsel was ineffective for failing to move to suppress evidence on grounds that law enforcement conducted an unlawful search incident to arrest under the standard of *Chimel v. California*, 395 U.S. 752 (1999),[8] and for failing to request a suppression hearing on this search-incident-to-arrest theory.  Doc. No. 1 at 8; Doc. No. 2 at 8–10.  He also argues that his appellate counsel was ineffective for failing to raise this issue on appeal.  *Id.*

In its opinion in Hollis's direct appeal, the Eleventh Circuit summarized the facts surrounding Hollis's arrest and the initial discovery and seizure of incriminating drug and firearm evidence:

---

[6] *See* Criminal Case No. 3:12cr-17-WKW, Doc. No. 151 at 213–14.

[7] *See* Criminal Case No. 3:12cr-17-WKW, Doc. No. 151 at 215.

[8] In *Chimel*, the Supreme Court held that a warrantless search of an arrestee's residence beyond the area within the immediate control of the arrestee cannot be justified under the Fourth Amendment as a search incident to the arrest.  395 U. S. at 755–68.
.

In February 2011, officers were searching for Hollis based on an outstanding Georgia arrest warrant for a parole violation. Police officers from Phenix City, Alabama, and agents of the United States Marshals Service received information that Hollis might be found in an apartment in Phenix City alleged to be a drug house. On March 1, 2011, officers surrounded the apartment. Some of the officers approached the front door of the apartment and knocked. Hollis peered out from behind a window, and the officers recognized him. The officers yelled "police" and ordered Hollis to open the door. After waiting for a brief period, the officers used a battering ram to open the door and arrested Hollis.

Other officers entered the apartment to conduct a protective sweep of the area. They found a cosmetic bag with marijuana on a dresser, weapons under a bed, and marijuana on the kitchen counter. The officers then obtained a search warrant for the premises. . . .[9]

*United States v. Hollis,* 780 F.3d 1064, 1067 (11th Cir. 2015).

In the district court, Hollis's counsel moved to suppress the drugs and firearms found in the apartment. The district court denied the motion to suppress. Hollis's counsel pursued the issue on appeal, arguing that the district court erred when it admitted the evidence seized from the apartment because Hollis had a reasonable expectation of privacy as a guest in the apartment.

The Eleventh Circuit stated that it need not address whether Hollis had a reasonable expectation of privacy as a guest in the apartment, because the initial warrantless sweep-search was a reasonable protective sweep for officer safety incident to the arrest of Hollis, under a valid arrest warrant, in the residence of a third party.[10] *See Hollis*, 780 F.3d at

---

[9] Additional drug evidence was discovered and seized in the search conducted after the warrant to search the apartment was obtained.

[10] "Law enforcement officers are permitted, in the context of a valid arrest, to conduct a protective sweep of a residence for officers' safety." *United States v. Yeary*, 740 F.3d 569, 579 (11th Cir. 2014).

16

1068–69.  In holding that the sweep-search in Hollis's case was a valid protective sweep,

the Eleventh Circuit reasoned:

> The protective sweep, performed incident to Hollis's arrest, was a valid attempt to ensure that the apartment did not contain "other persons who are dangerous and who could unexpectedly launch an attack."  *United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995) (internal quotation marks and citation omitted).  The government established that "there [were] articulable facts [that] . . . would warrant a reasonably prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene."  *Maryland v. Buie*, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990); *see also Hromada*, 49 F.3d at 690 (holding that a protective sweep was valid where the "purpose of the protective sweep . . . was to secure [the home] and investigate the officers' reasonable suspicion" that others were in the home).  The district court found that the officers suspected that the apartment was a "drug house" that could hold "other occupants."  One of the officers testified that he had been told that the apartment was a "drug house," with a "high level of activity," where "people [were] in and out of the house all hours of the day or night," and that they "could expect to encounter a number of people inside."  Based on that information, the officers could draw the "rational inference," *Buie*, 494 U.S. at 334, 110 S.Ct. at 1098, that there might be armed individuals inside the apartment.

*Hollis*, 780 F.3d at 1068.  The Court further held that the drugs and firearms discovered by

officers during the protective sweep were found in plain view and were therefore

admissible in evidence.  *Id.* at 1069.

In light of the basis on which the Eleventh Circuit upheld the warrantless sweep-

search and seizure—that officers discovered drugs and firearms in open view during a valid

protective sweep of the apartment where Hollis was arrested under a valid warrant—

Hollis's unlawful-search-incident-to-arrest argument under *Chimel* would not have

succeeded and would not have resulted in the suppression of the seized evidence.  Hollis's

trial and appellate counsel were not ineffective for failing to assert such an argument or to seek a hearing based on this argument.  This claim entitles Hollis to no relief.

**b.  <u>Police misconduct.</u>**  Hollis argues that his trial counsel was ineffective for failing to move to suppress on grounds that the seized evidence was fruit of the poisonous tree obtained through police misconduct.  Doc. No. 2 at 11–12.  He also argues that his appellate counsel was ineffective for failing to raise this issue on appeal.  *Id.*  This cursory argument by Hollis appears to be little more than a reassertion of his claim that law enforcement's initial discovery and seizure of incriminating drug and firearm evidence from the apartment where he was arrested was unlawful.  However, as discussed above, the Eleventh Circuit held that the drugs and firearms were found in plain view during a valid protective sweep of the apartment.  This belies Hollis's unsubstantiated claim of "police misconduct." Consequently, Hollis's trial and appellate counsel were not ineffective for failing to seek suppression of the evidence on this ground, and Hollis is entitled to no relief based on this claim.

**c.  <u>Mishandling of evidence.</u>**  Hollis says his trial counsel was ineffective for failing to file a motion in limine or to suppress the drug evidence on grounds it was mishandled by law enforcement.  Doc. No. 2 at 13.  He also claims his appellate counsel was ineffective for failing to raise this issue on appeal.  *Id.*

Here, Hollis appears to argue that Officer Mike Loyless of the Russell County Sheriff's Department mishandled drug evidence seized from the apartment where Hollis was arrested.  However, Hollis does not specify what drug evidence was mishandled or in what way it was mishandled.  Although Loyless, during his trial testimony, acknowledged

making mistakes in his incident reports in recording where particular drugs were found in the apartment by him and by other officers, he explained those mistakes and the reasons for them. *See* Doc. No. 16-4 at 39–44. As the Government argues, this was not an admission by Loyless that he mishandled evidence, and no other evidence in the record indicates that Loyless mishandled evidence. Doc. No. 15 at 87 n.13. Thus, Hollis's "mishandling of evidence" argument would not have succeeded and would not have resulted in the suppression of any evidence. Hollis's trial and appellate counsel were not ineffective for failing to assert such an argument, and this claim entitles Hollis to no relief.

### 4.   *Failure to Impeach Witnesses*

Hollis claims his trial counsel rendered ineffective assistance by failing to impeach witnesses Tina Howard, Detective Daniel Davis, and Officer Michael Loyless regarding alleged inaccuracies, conflicts, and inconsistencies in their testimony. Doc. No. 1-1 & 1-2; Doc. No. 2 at 16–19. He also argues that his appellate counsel was ineffective for failing to raise this issue on appeal. *Id.*

**a.  Tina Howard.**  Hollis first maintains that Tina Howard gave testimony at trial that was inconsistent with her grand jury testimony and that his counsel should have impeached Howard on this basis. Doc. No. 2 at 16–17; *see* Doc. No. 1-2. Howard, who was called as a defense witness, was the lessee of the apartment where Hollis was arrested and where the drugs and firearms were found. On direct examination, Hollis's counsel elicited testimony from Howard that she did not know Hollis and had never seen him before. Doc. No. 15-24 at 13–14. This was helpful to Hollis's defense that he had been invited to stay at the apartment as an overnight guest by a man named Terry Thomas—a

romantic partner of Howard's who sometimes stayed at the apartment even when Howard was staying at her mother's house—and that the drugs and firearms found in the apartment were not his, but instead belonged to Thomas or Howard. *See id.* at 12–16. It might have damaged Hollis's case for his counsel to impeach Howard—a favorable witness—with supposed inconsistencies in her trial and grand jury testimony.

As to the alleged inconsistent testimony by Howard, Hollis says Howard testified before the grand jury that she had only one key to the door of her apartment and had not given one to Thomas, but at trial she testified that Thomas could have taken her key and made copies. Doc. No. 2 at 16–17. Hollis does not suggest—much less show—how impeaching Howard with this alleged inconsistency would have aided his defense. Moreover, the Government cross-examined Howard about inconsistences in her trial and grand jury testimony, *see* Doc. No. 15-24 at 18–27, and the jury convicted Hollis anyway, which suggests that further impeachment of Howard would not have helped Hollis.

Hollis has not met his burden of pleading how his counsel's performance was deficient regarding impeachment of Howard, and he also fails to demonstrate prejudice by showing how Howard's trial testimony damaged his case or how counsel's failure to impeach her affected the outcome of his case. Hollis is therefore entitled to no relief on this claim of ineffective assistance of trial and appellate counsel.

  **b. <u>Davis and Loyless</u>.** Hollis also maintains that Detective Daniel Davis and Officer Michael Loyless gave inconsistent trial testimony about where in the apartment law enforcement officers found drugs. Doc. No. 2 at 17; *see* Doc. No. 1-1 & 1-2. He

argues that his counsel was ineffective for failing to impeach Davis and Loyless on this basis. *Id.*

The record reflects that Hollis's counsel thoroughly cross-examined both Davis, *see* Doc. No. 16-3 at 65–90, and Loyless, *see* Doc. No. 16-4 at 60–95, by pointing out inconsistencies between their testimony and inconsistencies in Loyless's testimony and his incident reports, and by questioning each officer about the actions of the other and about their own prior testimony. In closing argument, Hollis's counsel also noted inconsistencies in Davis's and Loyless's testimony, alleged that the drug evidence was mishandled, and pointed out the mistakes made by law enforcement in the case. Doc. No. 15-24 at 80–83. Hollis points to nothing else his counsel might have done to better emphasize the inconsistent testimony of Davis and Loyless.

The proper way for Hollis's counsel to challenge the testimony of these Government witness was through cross-examination and argument, which is what counsel did. Hollis's counsel did not perform deficiently regarding the officers' testimony. Hollis also fails to demonstrate that had counsel done something different regarding the testimony of these witnesses, the outcome of his trial would have been different. For these reasons, Hollis is entitled to no relief on this claim of ineffective assistance of trial and appellate counsel.

### 5. *Failure to Have Drug Evidence Reweighed and Reanalyzed*

Hollis claims his trial counsel rendered ineffective assistance by failing to have the drug evidence reweighed and reanalyzed. Doc. No. 2 at 13. He also claims his appellate counsel was ineffective for failing to raise this issue on appeal. *Id.* According to Hollis, if

the drug amounts were found to be smaller upon reweighing and reanalysis, his statutory minimum and maximum sentences would have been lower. *Id.*

Hollis points to no basis for his counsel to have sought to have the drug evidence reweighed and reanalyzed. He points to no errors in lab reports, no errors in expert witness testimony, and no mishandling of the drug evidence. He does nothing more than assert that reweighing and reanalyzing the drug evidence would have benefitted him. His conclusory assertion, based entirely on speculation, entitles him to no relief on this claim of ineffective assistance of trial and appellate counsel.

### 6. *Failure to Request 21 U.S.C. § 844(a) Instruction*

In an argument that is difficult to follow, Hollis says his trial counsel was ineffective for failing to request a jury instruction on possession of small amounts of a controlled substance under 21 U.S.C. § 844(a) and for instead allowing the district court to instruct the jury on the § 841(a)(1) offenses charged in the indictment. Doc. No. 2 at 15–16. Hollis also says his appellate counsel was ineffective for failing to argue this issue on appeal. *Id.*

The district court instructed the jury on both of the § 841(a)(1) offenses of possession of a controlled substance with intent to distribute, as charged in Counts 1 and 2 of the indictment, and, as to Count 2, on the lesser-included offense of simple possession of a controlled substances for personal use under § 844(a). *See* Doc. No. 15-25 at 7–9.[11] The lesser-included offense instruction on Count 2 was given based on Hollis's admission

---

[11] *See also* Criminal Case No. 3:12cr-17-WKW, Doc. No. 151 at 211–13.

that marijuana found on the kitchen table of the apartment was his.  *See* Doc. No. 15-4 at 101; Doc. No. 16-3 at 60.

Hollis shows no error in the district court's instructing the jury on the § 841(a)(1) offenses with which he was charged in Counts 1 and 2.  The only evidence supporting a lesser-included offense instruction was Hollis's admission that marijuana found on the kitchen table of the apartment was his.  The district court instructed the jury on the lesser-included § 844(a) offense under Count 2.

Hollis has not identified in any way that the court's instructions on the drug offenses were wrong.  Hollis's counsel did not perform professionally unreasonably in not objecting to the instructions, and Hollis can demonstrate no resulting prejudice.  Consequently, he is entitled to no relief on this claim of ineffective assistance of trial and appellate counsel.

### 7.   *Counsel's Request for Mistrial*

Hollis contends that his counsel at his first trial was ineffective for requesting (and obtaining) a mistrial because, he says, he "liked the jury" in that proceeding, which he says "had seen the light of the government's misconduct."  Doc. No. 1-2.

At Hollis's first trial, the Government sought to introduce his testimony from his pretrial suppression hearing to establish that he had given contradictory statements about his permission to be in the searched apartment.  *See* Doc. No. 16-2 at 31–37.  Hollis's counsel objected on grounds that admission of the prior testimony would violate Hollis's Fifth Amendment right to remain silent.  *Id*. at 32 & 36–39.  The district court overruled the objection and admitted the evidence and testimony.  *Id*. 38–43.

23

During the second day of the first trial, Hollis's counsel moved for a mistrial on grounds that Hollis's Fifth Amendment rights had been violated by admission of his suppression hearing testimony.  Doc. No. 15-10 at 5–8.  Counsel cited Supreme Court and Eleventh Circuit case law to support his claim.  *Id.*  The district court deferred ruling on the mistrial motion until the end of trial.  *Id.* at 9–11.  At the end of all the evidence, Hollis's counsel renewed the motion for a mistrial.  *Id.* at 89.  With no opposition from the Government, the district court granted the motion for a mistrial after "having considered alternatives and considered the consent of the government and having found no other alternative under the circumstances."  *Id.* at 94–95.

Hollis's counsel's request for a mistrial was clearly supported by the law and facts.  *See United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010) (citing *United States v. Simmons*, 290 U.S. 377, 394 (1968)) ("In *Simmons*, the Supreme Court held that a defendant's testimony in a Fourth Amendment pretrial suppression hearing cannot be admitted in trial without violating the Fifth Amendment privilege against self-incrimination; it was 'intolerable that one constitutional right should have to be surrendered in order to assert another.'").  Counsel did not perform deficiently in protecting Hollis's Fifth Amendment rights by moving for a mistrial.  And Hollis does not demonstrate that he was prejudiced by counsel's request for the mistrial.  He points to nothing that suggests he would have fared any better with the first jury than he did with the second.  Indeed, the first jury heard incriminating evidence regarding his contradictory statements about his permission to be in the apartment not heard by the second jury.

Having shown neither deficient performance nor resulting prejudice, Hollis is entitled to no relief on this claim of ineffective assistance of counsel.

## 8. *Reduction for Acceptance of Responsibility Under U.S.SG. § 3E1.1*

Hollis says his counsel rendered ineffective assistance at sentencing by failing to request a reduction in his offense level based on his acceptance of responsibility under U.S.S.G. § 3E1.1.  Doc. No. 1 at 10; Doc. No. 1-2 & 1-3.

Section 3E1.1 provides that a criminal defendant may receive up to a three-level reduction in the offense level calculation. "If the defendant clearly demonstrates acceptance of responsibility for his offense," the offense level may be reduced by two points.  U.S.S.G. § 3E1.1(a).  An additional one-level reduction may be granted where certain criteria are met:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1(b).

Application Note 1 to § 3E1.1 provides that "[i]n determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, . . . [the defendant] truthfully admitting the conduct comprising the offense(s) of conviction." U.S.S.G. § 3E1.1, cmt. n.1(A).  Application Note 2 to § 3E1.1 provides:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual

elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, cmt. n.1(A).

As the Government states in responding to this claim by Hollis:

Hollis has never accepted responsibility for his illegal conduct and maintains his innocence to this date, despite a jury's finding of guilt beyond a reasonable doubt and despite the evidence pointing to his guilt. He put the Government to its burden of proof not once, but twice, and he maintained his innocence even after his testimony at the motion to suppress hearing was rejected, and the motion to suppress the evidence was denied. Furthermore, Hollis never assisted authorities in the investigation of his own misconduct.

Doc. No. 15 at 99.

There was no basis for Hollis's counsel to request a § 3E1.1 reduction premised on Hollis's acceptance of responsibility. Hollis has failed to show he was entitled to such a reduction. Failing to establish deficient performance by his counsel and resulting prejudice, Hollis is entitled to no relief on this claim of ineffective assistance of counsel.

### 9. *Actual Innocence Except for Marijuana Possession*

Hollis says his counsel was ineffective at sentencing for failing to argue he was actually innocent of all criminal conduct except for possession of marijuana. Doc. No. 1 at 10.

Hollis sets forth no facts or argument demonstrating his actual innocence of the offenses for which he was convicted. Nor does he set forth facts or argument demonstrating there was insufficient evidence to sustain any of his convictions. His counsel moved for a judgment of acquittal at the close of the Government's case (Doc. No. 15-24 at 2) and again after the defense rested (*id.* at 65). Both motions challenged the sufficiency of the evidence. The motions were denied by the district court.[12]

Hollis's counsel also filed a motion for a new trial challenging among other things the sufficiency of the evidence and the weight of the evidence in favor of the jury's verdict.[13] The trial court denied that motion in a Memorandum Opinion and Order that provided in part:

> Considered without any presumption, *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985), the weight of the evidence was on the side of the prosecution. The government offered proof that Defendant was found in a so-called "trap house," containing large amounts of controlled substances, two loaded firearms, a scale with a latent print matched to Defendant, packaging equipment, and a large quantity of currency. Both the jury and the court heard credible evidence that Defendant knew the drugs were there, owned the drugs or exercised dominion or control over the drugs or the premises, and intended to distribute the drugs. As for the firearms charges, the same evidence supported the jury's finding that Defendant constructively possessed the firearms.[14]

With this backdrop, Hollis's counsel did not perform deficiently at sentencing by failing to again challenge the sufficiency of the evidence, much less to argue that Hollis was actually innocent of all criminal conduct except for possession of marijuana.

---

[12] *See* March 14, 2013 docket entry in Criminal Case No. 3:12cr-17-WKW.

[13] *See* Criminal Case No. 3:12cr-17-WKW, Doc. No. 116.

[14] Criminal Case No. 3:12cr-17-WKW, Doc. No. 121 at 2.

Certainly, also, Hollis fails to show that he was prejudiced by his counsel's failure to make such an argument at sentencing, as he demonstrates no reasonable probability that such an argument would have succeed.

Hollis is entitled to no relief on this claim of ineffective assistance of counsel.

### 10.   *Prior Drug Convictions: Career Offender and ACCA Enhancements*

Hollis claims his trial and appellate counsel rendered ineffective assistance by failing to argue that his prior drug convictions could not be used to enhance his sentence under the career offender guideline and under the Armed Career Criminal Act ("ACCA"). Doc. No. 1-2; Doc. No. 2 at 10–11; Doc. Nos. 24, 27, 29 & 31.

The Sentencing Guidelines at U.S.S.G. § 4B1.1 provide for enhanced penalties for certain defendants deemed to be "career offenders."   Generally, career offender status increases both a defendant's base offense level and his criminal history category, which becomes the highest category (VI) in every case.   U.S.S.G. § 4B1.1(b)(2).   A defendant is a career offender under § 4B1.1 if (1) he was at least eighteen when he committed the instant offense, (2) the instant offense is a felony crime of violence or controlled substance offense; and (3) he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense."   U.S.S.G. § 4B1.1(a).

Hollis was sentenced as a career offender because he had at least two prior felony convictions for a controlled substance offense.   In finding Hollis qualified as a career offender, the district court relied on his following prior convictions: (1) a 1993 Alabama conviction for sale of cocaine, in violation of § 13A-12-211, Ala. Code 1975; (2) a 1994 Alabama conviction for sale of cocaine, in violation of § 13A-12-211, Ala. Code 1975; and

(3) a 2000 Georgia conviction for trafficking cocaine, in violation of Ga. Code Ann. § 16-13-31.  *See* Doc. No. 18-1 at 12–13 & 15.  Based on his status as a career offender, Hollis's offense level was 37, and his criminal history category was VI.[15]  *See* U.S.S.G. § 4B1.1(b).

The district court found that the same prior controlled substance convictions constituted serious drug offenses, making Hollis an armed career criminal subject to sentencing under the ACCA on his conviction for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 4 of the indictment).  A conviction under § 922(g)(1) normally carries no mandatory minimum penalty and a statutory maximum sentence of 10 years' imprisonment.  18 U.S.C. § 924(a)(2).  However, the ACCA imposes a mandatory minimum sentence of 15 years' imprisonment when a defendant who violates § 922(g) has three prior convictions for either violent felonies or serious drug offenses.  18 U.S.C. § 924(e)(1).

Citing the Supreme Court's decisions in *Descamps v. United States*, 570 U.S. 254 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016), Hollis asserts that his prior drug convictions should not have been used to enhance his sentence under either the career offender guideline or the ACCA.  In citing *Descamps* and *Mathis*, Hollis appears to suggest, albeit obliquely, that he thinks his prior drug convictions were obtained under indivisible statutes that encompass conduct broader than the definition of "controlled substance offense" in the career offender guideline and broader than the definition of

---

[15] *See* Criminal Case No. 3:12cr-17-WKW, Doc. No. 153 at 3–4.

"serious drug offense" in the ACCA.  *See Descamps*, 570 U.S. at 257–62; *Mathis*, 136 S.Ct. at 2249.

In determining whether a prior conviction qualifies as a predicate "controlled substance offense" under the career offender guideline, courts follow what is described as the "categorical approach."  *See United States v. Delaney*, 639 F. App'x 592, 594 (11th Cir. 2016) (specifically dealing with whether a prior conviction was a predicate "crime of violence" under the career offender guideline).  This same categorical approach is followed in determining whether a prior conviction qualifies as a predicate "serious drug offense" under the ACCA.  *See United States v. White*, 837 F.3d 1225, 1229 (11th Cir. 2016).  Under the categorical approach, courts are concerned only with the fact of the prior conviction and the statutory definition of that offense, rather than with the particular facts of the crime. *White*, 837 F.3d at 1229; *see Delaney*, 639 F. App'x at 594.  Under the categorical approach, for purposes of Hollis's case, a prior conviction qualifies as a career offender or ACCA predicate only if the statute's elements are the same as, or narrower than, the definition of "controlled substance offense" in the career offender guideline or the definition of "serious drug offense" in the ACCA.  *See White*, 837 F.3d at 1229; *United States v. Smith,* 775 F.3d 1262, 1267 (11th Cir. 2014).

When a statute covers some conduct that falls within, and other conduct that is broader than, a predicate offense as defined by the career offender guideline or ACCA and

when that statute is divisible,[16] courts may use a "modified categorical approach" to determine whether a defendant's prior conviction qualifies. *See Descamps v. United States*, 570 U.S. 254, 257–62 (2013).  Under the modified categorical approach, courts look to a limited class of documents, such as the indictment and jury instructions, to determine which alternative element was the basis of the defendant's conviction. *Id*. at 261–62.  Courts then consider whether that element is encompassed by the career offender guideline or ACCA predicate offense. *Id*.

    **a.**  <u>**Hollis's career offender enhancement.**</u>  Under the Sentencing Guidelines, a "controlled substance offense" is defined as "an offense under federal or state law, punishable for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

    Two of the prior convictions relied on by the district court to classify Hollis as a career offender were Hollis's 1993 and 1994 Alabama convictions for sale of cocaine, in violation of § 13A-12-211, Ala. Code 1975.  Section 13A-12-211 states: "A person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, he or she sells, furnishes, gives away, delivers, or distributes a controlled substance enumerated in Schedules I through V." § 13A-12-211(a), Ala. Code 1975.

---

[16] A divisible statute "sets out one or more elements of the offense in the alternative" Descamps v. United States, 570 U.S. 254, 257 (2013). *See also Mathis v. United States,* 136 S.Ct. 2243, 2249 (2016) (clarifying that a statute enumerating "various factual means of committing a single element" is not divisible).

"Distribution of cocaine includes selling, furnishing, or delivering cocaine." *Hemphill v. State*, 669 So. 2d 1020, 1022 (Ala. Crim App. 1992); *see also Carson v. State*, 610 So. 2d 1251, 1252 (Ala. Crim. App. 1992) ("A person violates § 13A-12-211 if he participates in the sale of a controlled substance."). None of the elements of § 13A-12-211 encompasses conduct broader than the definition of "controlled substance offense" in the career offender guideline, and Hollis can cite to no case law where § 13A-12-211 has been interpreted to include conduct that would not qualify under the career guideline definition of a controlled substance offense. While the Alabama statute includes "sells, furnishes, gives away, [and] delivers," in addition to "distributes," in its list of prohibited activities, these additional activities are forms of distribution or dispensing. Therefore, their inclusion does not stretch the elements of the statute beyond the career offender guideline definition of controlled substance offense.

Because the elements of the Alabama statute "match," and do not encompass conduct broader than, the guideline definition of controlled substance offense, any objection by Hollis's counsel to the district court's reliance on his two § 13A-12-211 convictions as predicate offenses to make him a career offender would have been unavailing. Counsel was not ineffective on this basis. And because the two Alabama controlled substance convictions were sufficient to trigger application of the career offender enhancement in Hollis's case, it is unnecessary for this court consider whether Hollis's 2000 Georgia conviction for trafficking cocaine constituted a controlled substance offense and predicate conviction usable for career offender offender enhancement.

For the reasons discussed, then, Hollis is entitled to no relief on his claim that his trial and appellate counsel were ineffective for failing to argue that his prior drug convictions could not be used to enhance his sentence under the career offender guideline.

**b. Hollis's ACCA enhancement**.  The term "serious drug offense" is defined by the ACCA to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

As noted, the ACCA mandates a 15-year minimum sentence for a defendant who has three prior convictions for a violent felony or a serious drug offense and who is convicted of violating 18 U.S.C. § 922(g).  18 U.S.C. § 924(e)(1).  In sentencing Hollis under the ACCA for his § 922(g) conviction, the district court relied on Hollis's 1993 and 1994 Alabama convictions for sale of cocaine, in violation of § 13A-12-211, Ala. Code 1975, and his 2000 Georgia conviction for trafficking cocaine, in violation of Ga. Code Ann. § 16-13-31.[17]  None of the elements of § 13A-12-211, the statute previously discussed in this Recommendation in relation to Hollis's career offender enhancement, encompasses conduct broader than the ACCA definition of "serious drug offense," and Hollis can cite no case law where § 13A-12-211 has been interpreted to include conduct that would not qualify under the ACCA definition of serious drug offense.  Indeed, the Eleventh Circuit and district courts within the Eleventh Circuit have held that a conviction under § 13A-12-

---

[17] The maximum penalties prescribed by both the Alabama and Georgia statutes are well over 10 years' imprisonment.  *See* § 13A-12-211(b), Ala. Code 1975; Ga. Code Ann. § 16-13-31.

211 categorically qualifies as a serious drug offense under the ACCA.  *See United States v. Smiley*, 263 F. App'x 765, 769 (11th Cir. 2008) ("Smiley had been convicted of three counts of unlawful distribution of a controlled substance under Ala. Code § 13A-12-211, a Class B felony punishable by not more than twenty years.  Thus, Smiley's prior convictions meet the definition of a serious drug offense.") (internal citations omitted); *Thomas v. United States*, 2016 WL 4920046, *5 (N.D. Ala. 2016) (finding conviction for unlawful distribution under Alabama law was a serious drug offense under the ACCA definition); *Mims v. United States*, 2017 WL 2378085, at *7 (N.D. Ala. 2017) (denying relief where petitioner asserted claim under *Mathis* and holding that Alabama convictions for unlawful distribution of a controlled substance in violation of § 13A-12-211 are categorically serious drug offenses for purposes of the ACCA).  Thus, Hollis's two § 13A-12-211 convictions qualified as serious drug offenses usable for ACCA enhancement.[18]

The district court relied on Hollis's 2000 Georgia conviction for trafficking cocaine in violation of Ga. Code Ann. § 16-13-31 as the third predicate conviction for purposes of the ACCA.  Section 16-13-31 states: "Except as authorized by this article, any person who sells, manufactures, delivers, or brings into this state or who is in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine, as described in Schedule II, in violation of this article commits the felony offense of

---

[18] Hollis also asserts that his Alabama controlled substance convictions did not qualify as controlled substance offenses under the career offender guideline or as serious drug offenses under the ACCA because the Alabama statute contains no mens rea element.  Doc. No. 2 at 10–11.  This argument is foreclosed by Eleventh Circuit precedent.  *United States v. Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014); *United States v. James*, 430 F.3d 1150, 1154–55 (11th Cir. 2005), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *United States v. Ackerman*, 709 F. App'x 925, 928(11th Cir. 2017); *United States v. Landaverde-Cruz*, 629 F. App'x 854, 856 (11th Cir. 2015).

trafficking in cocaine[.]"   Ga. Code Ann. § 16-13-31(a)(1). While the Georgia statute includes "possession" in its list of prohibited activities, it must be possession of a significant quantity of cocaine—28 grams or more—before Georgia deems the offense drug "trafficking."   For this reason, the Eleventh Circuit has held that a conviction under the Georgia statute necessarily infers an intent to distribute the controlled substance. *United States v. Madera-Madera*, 333 F.3d 1228, 1231–32 (11th Cir. 2003).   And the Eleventh Circuit has applied this same rationale to similar language regarding possession of large quantities of a controlled substance in Alabama's drug trafficking statute, § 13A-12-231, Ala. Code 1975, finding that the possession of large quantities indicates an intent to distribute those drugs.  *United States v. White*, 837 F.3d 1225, 1232–34 (11th Cir. 2016). Thus, the Eleventh Circuit held that a defendant's Alabama conviction for trafficking by possession of at least 28 grams of cocaine constituted a serious drug offense and a valid predicate under the ACCA.  *White*, 1225 at 1235.

Reading *Madera-Madera* and *White* together, the same result obtains with Hollis's Georgia conviction for cocaine trafficking as with the defendant in *White*'s conviction under Alabama's trafficking statute.  That is, Hollis's conviction for trafficking cocaine in violation of Ga. Code Ann. § 16-13-31 constituted a serious drug offense and a valid predicate under the ACCA.  The least culpable conduct criminalized by the Georgia trafficking statute is within the ACCA definition of serious drug offense.  Hollis was properly sentenced under the ACCA because he had three qualifying prior convictions for serious drug offenses.

For the reasons discussed, then, any objection by Hollis's counsel to the district court's reliance on his two Alabama convictions and his Georgia conviction as predicate offenses for ACCA enhancement would have been unavailing. Counsel was not ineffective on this basis. Consequently, Hollis is entitled to no relief on this claim that his trial and appellate counsel rendered ineffective assistance.

### 11.   *Two-Level Reduction Under Amendment 782*

Hollis claims his counsel rendered ineffective assistance at sentencing by failing to request a two-level reduction to his offense level based on Amendment 782 to the Sentencing Guidelines. He also argues that his appellate counsel was ineffective for failing to raise this issue on appeal. Doc. No. 1-3.

Amendment 782 to the Sentencing Guidelines, which reduced by two levels most of the base offense levels in the Drug Quantity Tables at U.S.S.G. §§ 2D1.1 and 2D1.11, became effective on November 1, 2014. *See* U.S.S.G. app. C, amend. 782 (2014); *United States v. Harris,* 727 F. App'x 610, 612 (11th Cir. 2018). Hollis's sentencing took place on August 6, 2013. His counsel could not have anticipated the enactment of Amendment 782 when he was sentenced, and so counsel did not perform deficiently at sentencing by failing to request a sentence reduction based on Amendment 782. *See, e.g., United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (an attorney's failure to anticipate a change in the law does not constitute ineffective assistance of counsel).

Nor did Hollis's counsel perform deficiently by failing to argue for a sentence reduction under Amendment 782 during the pendency of Hollis's appeal. Amendment 782 applies retroactively. *United States v. Maiello*, 805 F.3d 992, 994 (11th Cir. 2015). The

appropriate avenue for relief based on Amendment 782 is to file a motion for a sentence

reduction under 18 U.S.C. § 3582(c)(2).[19]  *See, e.g., Hardin v. United States*, 2015 WL

1419173, at *4 (S.D. Ga. 2015).  Hollis did that in a *pro se* motion he filed on December

16, 2016.[20]  The district court, however, denied Hollis's motion for a sentence reduction in

an order that stated:

> Section 3582(c) provides that the district court may reduce a defendant's
> sentence of imprisonment if it was based on a guideline range that the
> Sentencing Commission subsequently lowered.  But section 3582(c)(2) does
> not authorize a district court to reduce a defendant's sentence where a
> retroactively applicable guideline amendment reduces his base offense level
> but does not alter the guideline range upon which his sentence was based.
> *United States v. Moore*, 541 F.3d 1323, 1330 (11th Cir. 2008).  "[W]hen a
> drug offender is sentenced under the career-offender guideline in § 4B1.1,
> the guideline range upon which his sentence is based is calculated from §
> 4B1.1, not § 2D1.1."  *United States v. Oxendine*, 708 F. App'x 632, 633 (11th
> Cir. 2018) (citing *United States v. Lawson*, 686 F.3d 1317, 1321 (11th Cir.
> 2012)).  "Because an amendment to section 2D1.1 does not affect a career
> offender's guideline range, he is ineligible for a sentence reduction under §
> 3582(c)(2) based on an amendment to § 2D1.1."  *Id.* (citing *Lawson*, 686
> F.3d at 1321); *see also United States v. Graham*, 691 F. App'x 601, 601–02
> (11th Cir. 2017) (denying relief under Amendment 782 and section
> 3582(c)(2) where the defendant's "Guidelines range would not have been
> lowered by Amendment 782 because his sentence was determined based on
> his career-offender status, which the Amendment did not change").

>      Here, Defendant's motion fails for the reasons espoused in the
> Eleventh Circuit's decisions in *Oxendine* and *Lawson*.  Amendment 782,

---

[19] "Section 3582(c) grants district courts limited authority to modify a term of imprisonment once it has been imposed.  Pursuant to § 3582(c)(2), the court may reduce a defendant's prison term if the defendant was 'sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'  18 U.S.C. § 3582(c)(2).  Only certain amendments made retroactively applicable are eligible bases for a sentence reduction under § 3582(c)(2).  *See* U.S.S.G. § 1B1.10(a)(1), (d)."  *United States v. Hall*, 619 F. App'x 818, 819 (11th Cir. 2015) (citation omitted).

[20] Criminal Case No. 3:12cr-17-WKW, Doc. No. 164.

(continued…)

which only lowers the offense levels in section 2D1.1, does not affect Defendant's guideline range.  At the sentencing hearing, the court found that Defendant was a career offender under section 4B1.1. (*See, e.g.,* Doc. # 153, at 3.)  The career-offender guideline in section 4B1.1, not section 2D1.1, determined Defendant's guideline range.  Because Defendant's guideline range was not calculated under section 2D1.1, Amendment 782 did lower the guideline range upon which his sentence was based.  Defendant is not entitled, therefore, to relief under section 3582(c).[21]

Hollis's appellate counsel was not ineffective for failing to request a reduction to Hollis's offense level based on Amendment 782 because such relief is not properly sought on direct appeal, but instead must be pursued in a motion for sentence reduction under § 3582(c)(2), and because Hollis's sentence under the career offender guideline rendered him ineligible for a sentence reduction under § 3582(c)(2).  Hollis is entitled to no relief on this claim of ineffective assistance of counsel.

### 12.    *Other Claims Against Appellate Counsel*

**a.  <u>Failure to raise claims against trial counsel</u>**.  In desultory fashion throughout his pleadings, Hollis asserts that his appellate counsel rendered ineffective assistance, usually interjected in his arguments regarding his trial counsel's alleged ineffective assistance.  *See* Doc. No. 2 at 2–20.  Where it appears that Hollis claims his appellate counsel was ineffective for failing to pursue an issue underlying a claim of ineffective assistance of trial counsel, this court has addressed the claim of ineffective appellate counsel with its discussion of his claim of ineffective trial counsel.  To the extent Hollis seeks to argues that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective, the court notes that the lawyers who represented Hollis at trial also

---

[21] Criminal Case No. 3:12cr-17-WKW, Doc. No. 166 at 1–3.

represented him on appeal. Counsel cannot be expected to raise his own alleged ineffectiveness. Moreover, the Eleventh Circuit generally does not address ineffective-assistance claims on direct appeal, because the record is generally not sufficiently developed to bring such claims on appeal. *See United States v. Puentes-Hurtado,* 794 F.3d 1278, 1285 (11th Cir. 2015). Finally, and in any event, the claims of ineffective trial counsel that Hollis says should have been raised on appeal have been addressd in this Recommendation.

      **b.** **Pursuit of fingerprint expert issue.** Hollis also claims that his appellate counsel rendered ineffective assistance by failing pursue the issue that the district court abused its discretion by excluding testimony from the defense's forensic expert regarding the sufficiency of a latent fingerprint for comparison. This claim is without merit, because this is one of the very issues counsel pursued on appeal to the Eleventh Circuit.

      **c.** **Sufficiency of the evidence.** Finally, Hollis claims there was insufficient evidence to sustain his convictions and that his appellate counsel was ineffective for failing to pursue this issue on appeal. Hollis does not present facts or argument supporting his claim there was insufficient evidence to sustain his convictions. Certainly he presents nothing to establish a reasonable likelihood that such a claim would have succeeded on appeal. To paraphrase the district court's assessment of the evidence in its order denying Hollis's new trial motion,[22] the Government presented evidence that Hollis was found in a "trap house" (a residence where illegal drugs are produce, bought, and sold) containing

---

[22] See Criminal Case No. 3:12cr-17-WKW, Doc. No. 121 at 2.

large amounts of controlled substances; two loaded firearms; a scale with a latent print matched to Hollis; packaging equipment; and a large amount of currency. There was evidence that Hollis knew the drugs were there; owned or exercised dominion or control over the drugs or the premises; and intended to distribute the drugs. There was also evidence that Hollis constructively possessed the firearms and that the firearms helped, promoted, or advanced the drug trafficking taking place. Hollis's appellate counsel was not ineffective for failing to raise an argument that would not have succeeded. Hollis is entitled to no relief on this claim of ineffective assistance of appellate counsel.

## III.   CONCLUSION

Accordingly, for the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Hollis be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before **February 6, 2019**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error

or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

    Done this 23rd day of January, 2019.


           /s/   Wallace Capel, Jr.
          CHIEF UNITED STATES MAGISTRATE JUDGE